Mr. McKenney's case involved a juror who heard in the hallway before trial began that, by a sheriff's, we're hearing a conversation by a sheriff's deputy, that Mr. Early Mr. McKenney's case involved a three strikes matter and also that the sheriff was going to testify that Mr. Early had a gun in his possession. He was charged with being a felon in possession and this was a three strikes case. So in this case, Mr. Early is arguing, and I believe that this was a structural error, not a trial-type error, because after the sheriff's deputy said in the hallway in front of the juror that this was a three strikes case, the trial court had an abbreviated hearing where he asked the juror, well, what is it exactly that you heard? And the juror said that he heard what the sheriff's deputy said, and I say it's an abbreviated trial because he never called in the sheriff's deputy to ask him what exactly he said. Your client's counsel asked him to call in the sheriff's deputy? No. In fact, your client's counsel seemed pretty satisfied with the idea of keeping this juror. It was the prosecutor that expressed concern about keeping the juror. Right. But this Court has held in Dyer v. Calderon that it is the independent responsibility of the judge to satisfy himself that the allegations of bias are unfounded. Well, he did. He satisfied himself. Is there any question about that? I think it's very clear that the juror, even though the judge said he was satisfied that the juror would be impartial and fair, the juror equivocated when he was asked questions, and he sat there and listened to three witnesses during the trial and during the opening statements where they said that Mr. McKinney had a gun in his possession. And as a matter of fact, there was a pretrial motion indicating that none of the information regarding any of Mr. McKinney's prior record was to come in, except for he did stipulate that he had a prior felony conviction as he was charged with being a felon in possession. What did the juror hear that would have disqualified him? Well, he equivocated, and he indicated that when he heard the testimony, and that's at the end. Well, let me ask it this way. Okay. From your standpoint, the most damaging thing he could have heard, what was it? The most damaging thing that he heard was that this was a three-strikes case. Now, do we know what, whether this juror knew what three-strikes meant? I think that the juror seemed to know what three-strikes meant. He seemed to know that it was something that he should tell the, he should discuss with the trial judge. Or just the fact that he overheard some things from the deputy, but I didn't see anything in there in which he indicated what three-strikes would have meant to him. Well, he indicated that after he heard the sheriff, overheard the sheriff talking, he listened to the testimony and the closing arguments, and he said that it all, he thought about it that night after he went home and was thinking about what he heard during the trial, and he indicated, and I quote, that after hearing the testimony and after hearing that this sheriff, this particular sheriff was the first witness, it all came together for him. And so he realized it pertained to this case, because what he heard from the deputy didn't even make clear that it was the same case that he was there to serve as a juror on. Right. And that's when he knew that this was a three-strikes case. And I think that he, there's, there's, there's no way that he. What he overheard was about a shotgun, wasn't it?  He heard that this was a three-strikes case. No, but it also was about a shotgun. Right. He also heard, but that corroborates the fact. But the shotgun was not, was found, it was a rifle. Well. I mean, that would certainly indicate to a juror that it would not be the same case. Well, it was a gun. It's felon in possession of a firearm. And I don't think that the fact that it was a shotgun or a rifle would make a big difference. But that corroborated. If you overheard and you weren't sure what case he was talking about, and he talks about a shotgun and it's a rifle that was found and he's a witness, wouldn't, it would seem to me that that would not, would be an indication that it was not the same case. Well, I think that just, I think that you can look at it the other way. And I think that the fact that this was the same sheriff that was the first witness that testified corroborates what he heard did pertain to this case. But he did stipulate to being a felon. Right. But he didn't stipulate that he was qualified under three strikes. Well, that means he's a felon twice instead of once. Because this case would have been, in theory, the third strike. I don't know about the dozen other convictions. It means that he was a felon that was convicted of a prior serious or violent felony. That's what three strikes means. But you know what the problem is? First of all, these deputies talk a lot anyway. You know, I think if you look through the cases, what did this judge talk, refer to this deputy as? As a loose lip, lip deputy. I think he said he was flapping his gums. What? He said he was flapping his gums. Oh, flapping his gums. Flapping his gums in the hallway. Well, that's a better expression. But, you know, the judge, he called in this witness and talked to him, and the witness said that he would just decide the case strictly on the evidence and he'd put that aside. You know, they went through this whole ritual. And then his own lawyer, McKinney's own lawyer, seemed satisfied that this juror number 11 would be all right. So you just got a tough road to hoe. I always have a tough road. Comes with the territory sometimes. I feel the same way every day. Well, I think that the fact that it was so easy for the – it would have been so easy for the trial judge just to put an alternate in there when he knew that this juror had already heard that this was a three strikes case. It wouldn't have cost any time. It wouldn't have even – this is not like those cases where you hear the whole trial already and then it's a much more difficult decision. Would that have given – I mean, your client's counsel wanted this juror, maybe for jury selection decided this was their best juror. It was the prosecutor that was saying, well, we're not so sure here. I mean, isn't there a possibility the trial judge violates some other right of your client if he knocks off a juror that your client's happy to have there? It's a problem for the trial judge, and I understand you need to balance these factors, and you're arguing based on the facts as they unfolded. Yes. But I can understand the trial judge's problem in figuring out what to do. Right. Right. But I think that one of the errors here is that one of the most prejudicial information or one of the most prejudicial things you can find out at a trial is that a client has a serious or violent criminal history, and that was the big error here. And I'll reserve my one minute and 44 seconds. Oh, you're absolutely right on that. And I'll reserve my minute for rebuttal. Thank you. Good morning. May it please the Court. Deputy Attorney General Michael Johnson on behalf of Respondent. I think the Court is focused right in on what is the most significant point in this record, which is that Petitioner's own attorney, of course, wanted this juror to remain. Let me ask you something. Why don't you get your office, which probably is in a state of flux, to send out a bulletin to the sheriffs? Because this is a common problem. This goes on all the time, all the time with bailiffs and sheriffs, police officers talking and sometimes dropping hints and all that and just creating problems. I mean, this isn't an isolated event. I agree. I recognize there are other cases involving this kind of conduct. And I think the majority of deputies. Doesn't your office advise law enforcement? We do occasionally. I'm not aware of overseeing trial courts in this fashion. I think it's, to me, the trial courts that have expressed to deputies in the past that they shouldn't be behaving in this kind of conduct. Your office has lots of cases to defend, at least at the habeas stage in front of us. That's when we see it. That's true. And we're happy working on that for that. We generally have very little involvement at the trial court level. And I think, honestly, the majority of deputies know that this is a problem. But, unfortunately, these things happen from time to time. What if your office said that our court is concerned about the fact that we continually get these cases where there are loose-lipped deputies and that there should be extra precautions taken? I'm certainly happy to pass that along. You know, they used to have, during the Second World War, the slogan, a slip of the lip can sink a ship, you know. So a slip of the lip can sink a. . . That's right, Your Honor. I think in this case, fortunately for me, it's clear that the ship was not sunk. I think the trial court. Why did the prosecutor want him off the panel? He was worried. That's a very interesting question. And I think, and maybe this was a point that was not expounded upon enough in the briefs, but I think the nature of the particular communication here, which was that this is a three-strikes case, and I'm not aware of any other published case out there on this, really could cut either way. And I think what happened in this case was after this colloquy with the juror,  after all, the juror learns, wow, this could be a potentially long sentence for a guy who is on trial for felon in possession of a shotgun. Maybe I should look at this really closely before finding him guilty. My suspicion is that that's what happened, and that's probably why the prosecutor. . . Well, I think you're dreaming. I don't know. I think that would be a concern on the part of the prosecutor, because you don't know exactly whether the jury would think. . . if, which is maybe this what you're practicing me dreaming, that this juror knew all about how the three-strikes matter worked. Well, I don't think there is any indication in the record that this juror knew all about how three-strikes works. I think this is. . . I think the point is this is distinguishable from those cases upon which Petitioner heavily relies here, where the jury is made aware of specific prior criminal activity by the defendant, which is prejudicial because we get into that area of using the evidence as propensity, particularly when it's closely related. For instance, had the juror in this case learned that this particular defendant had 13 or 14 prior residential burglaries, that obviously would have been highly prejudicial. But the information here was just three strikes, which of course raises an inference that there are prior convictions, but says nothing about the quality of those prior convictions. Didn't the deputy say something about, well, he's done this before? I thought I remembered something like that. No, there are cases out there involving that situation, but that did not occur in this case. And I think that's the important distinction that I'm trying to point out here. Those cases in which a deputy has said something like this happened before or where there was information about a prior crime similar to the one for which the defendant is on trial, those have found the comments to be prejudicial. I don't think that's the case here. And I think really the bottom line in this case is the trial court did, I think, everything that could have been expected of him in this type of a case. I think Smith v. Phillips, which is probably the leading case on this, says that a trial court is simply expected to hold a hearing when this type of issue is recognized and determine whether the juror is able to serve impartially. And I think just to respond to a point the Petitioner made, the juror here did not equivocate. I think, quite to the contrary, the juror repeatedly said he could follow the instructions, he would be impartial, he didn't. And this is another important point. I think the juror himself was unsure all along whether this even applied to this case. And with that, unless there are any other questions. The rifle and the shotgun. To be honest, Your Honor, my recollection of the record was that it was a shotgun that was found. I could be wrong about that. But I didn't pick up on that distinction. I don't think it was a rifle. Okay. Thank you very much. Thank you. It was a shotgun case in the trunk, but what they actually found was a rifle. It's our colleague from Nevada that understands that distinction. In places where the distinction is understood, it's understood very well. Yeah, well, the Supreme Court understands it, too, because they like to go hunting. And they're grateful it's with a shotgun sometimes, not with a rifle. Well, I just wanted to briefly just cite to the part of the record where the juror actually did equivocate. And he was asked whether or not he could just put that aside. And he said that he would try, but that it was already out as far as he was concerned. Where in the record are you referring? I'm referring to the page number. It is on page 144 of the transcript. He said, I feel I could do my best. It's difficult to say honestly you've heard something when it's an objection that's overruled, whatever. That information is still going out. So it's I would do my best to disregard what I heard in the hallway. But I don't think that he was sure that he could. And, you know, the cat was out of the bag. And there was just no way he could have put that out of his mind. And this case is different than the case where the sheriff's deputy says, and that was Dixon versus Sullivan, that he's done something like that before. Because when he actually heard the deputy who testified say that this was a three strikes case, that deputy was in essence vouching for the truth of the matter that this was a three strikes case. It wasn't something like he had done something like this before. Because it was the actual deputy who testified at the trial. The big problem that you have is that your client's counsel, trial counsel, said he was satisfied with this hearing number 11. Right. But I think the trial judge still had a duty to on its own. But he did a pretty good job, didn't he? Well, he didn't call the sheriff's deputy in to come and answer questions about what he actually said. Oh, but he sure examined the juror. A little. Quite a lot. Quite a lot. Okay. Well, thank you. Thank you very much. Thank you. Well argued on both sides. And the matter will stand submitted. And I'll go to.
judges: Hug, Pregerson, Clifton